**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH CULBRETH, | ) | Docket No. 16 C 6146 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CHICAGO, et al., | ) | Chicago, Illinois |
| | ) | January 31, 2018 |
| Defendants. | ) | 10:13 o'clock a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS
BEFORE THE HONORABLE MARIA VALDEZ, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:   THE HAMILTON LAW OFFICE, LLC
                     BY:  MS. TORREYA L. HAMILTON
                          MS. KATHLEEN A. HENNESSY
                     53 W. Jackson Blvd., Suite 452
                     Chicago, Illinois  60604

For the Deft. City:  MR. JONATHAN C. GREEN
                     MS. KATHRYN E. KOHLS
                     Chicago Corporation Counsel
                     30 N. LaSalle St., Suite 900
                     Chicago, Illinois  60602

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PROCEEDINGS RECORDED BY
DIGITAL RECORDING
TRANSCRIPT PRODUCED BY COMPUTER

**\*\*\* PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION \*\*\***
**NOTE:   FAILURE TO STAND NEAR THE MICROPHONE MAKES PORTIONS**
**UNINTELLIGIBLE AND INAUDIBLE**

```
 1   APPEARANCES   (Continued):

 2
     For the individual          MS. VICTORIA R. BENSON
 3   officers:                   City of Chicago, Department of Law
                                 30 N. LaSalle St., Suite 900
 4                               Chicago, Illinois   60602

 5
     Also Present:               MR. BRANDON CRASE, Acting General
 6                                  Counsel, COPA

 7
     Transcriber:                MS. JOENE HANHARDT
 8                               Official Court Reporter
                                 219 S. Dearborn Street, Suite 1744-A
 9                               Chicago, Illinois   60604
                                 (312) 435-6874
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              THE CLERK:  Case 16 C 6146, Culbreth vs. City of
2     Chicago, et al.  Status hearing.
3              THE COURT:  And while they are making their way, the
4     Court does apologize for the delay due to technical
5     difficulties.
6              MR. GREENE:  Good morning, your Honor, Jonathan Clark
7     Green on behalf of the City.
8              And with me today I have Brandon Crase, Senior
9     Litigation Counsel and Acting General Counsel of COPA, as
10    well.
11             MR. CRASE:  Good morning, your Honor.
12             THE COURT:  Good morning.
13             MS. KOHLS:  Good morning, your Honor, Kathryn Kohls on
14    behalf of the City.
15             MS. BENSON:  Good morning, your Honor, Victoria Benson
16    -- B-e-n-s-o-n -- on behalf of the individual defendants.
17             MS. HAMILTON:  Good morning, Judge, Torreya Hamilton
18    on behalf of the plaintiff.
19             MS. HENNESSY:  Good morning, your Honor, Kathleen
20    Hennessy -- H-e-n-n-e-s-s-y -- on behalf of the plaintiff.
21             THE COURT:  All right.  Good morning.
22             So, we are here back on the status, given the issues
23    that were raised at the last status.
24             So, what is going on?
25             MR. GREENE:  If I may bring two things to the Court's

1 attention.

2 We have been receiving some harassing phone calls from
3 Mr. Granich. I just wanted the Court to be aware of it.

4 I got I rant the day before the last status.

5 One of the new COPA investigators that has been
6 assigned to the case told me that they received an harassing
7 phone call from him.

8 And, then, just this late week, I received another
9 voicemail saying, "If you want to fight, let's fight over the
10 phone."

11 I mean, it is really obnoxious, unprofessional and I
12 would just ask him to cease and desist. And if his colleagues
13 can forward that to him --

14 THE COURT: Who is the lead counsel on the plaintiff's
15 side?

16 MS. HAMILTON: It is actually Mr. Granich. Maybe
17 Brooks had a cold, I guess -- lead counsel -- if anything.

18 I wasn't present for any of that, Judge. I can't
19 answer for it.

20 THE COURT: Well, this is what I will say, is there is
21 one thing that gets attorneys in trouble. And we have had
22 recently four attorneys that the Executive Committee has had to
23 sanction quite strongly with not being able to practice in the
24 building for a period of time because of interactions among,
25 you know, one side versus the opposing side.

1            And litigation is difficult.  And there are,
2   obviously, issues that each side has very strong views on.  But
3   I would expect only professionalism in how attorneys
4   communicate with each other.
5            So, that is all I will say on that -- on that score.
6            Professionalism is not using -- not raising -- voices,
7   not using slurs or expletives or any of that nature.
8            But you get to say, "If we can't resolve this, I will
9   have to take it to court."
10           That is not a threat.  That is just a reality.
11           Other than that, though, it should be calm, cool and
12  collected.
13           So, I will leave it at that.
14           MR. GREENE:  And I appreciate that, your Honor.
15           But the second one was -- just for the record -- the
16  comments made by Mr. Granich at the last status, regarding my
17  own personal involvement in the Turner case, were
18  mischaracterizations, at best.
19           I just want to state that for the record, if it wasn't
20  clear the last time.  That is all.
21           THE COURT:  Mr. Green, I don't even remember the
22  comments.  So, now I am going to go back and listen to them
23  because you have raised it.
24           (Laughter.)
25           THE COURT:  All right.

1             So, where are we on this litigation?
2             MS. HAMILTON:  Okay.
3             So, certainly we seem to have gotten defense counsel's
4  attention.  Last time we were in court -- since we have been in
5  court and in the last week or so -- we have received over 200
6  minutes of audio files of interviews that were conducted by
7  COPA investigators of the defendant officers in this case, and
8  over 700 pages of additional documents that had not been
9  previously produced.
10            A large -- I can say that a large -- we haven't gotten
11 through all of these, Judge.  We have been trying to get
12 through them, but we have just gotten things as recently as the
13 day before yesterday.
14            So, I can say that some of these documents are
15 deposition transcripts from this case.
16            So, it appears that, you know, the Corporation Counsel
17 thought this new -- that there was this investigation going
18 on -- and COPA knew that the litigation was going on, but the
19 only people that were in the dark about what was happening is
20 plaintiff's counsel.
21            I do not have any indication, other than what I am
22 saying here, that any of these attorneys were -- you know, knew
23 that these witness invest- -- that they knew that any of these
24 witness statements were happening and that they were just not
25 producing them.

1              I don't have anything like that, but what I am seeing
2     is just a complete breakdown in the system that has delayed
3     this case.  And, you know, you would think -- I think as your
4     Honor even said last time -- we have a death case here.
5              We have had multiple problems with the production and
6     the late disclosure of, you know, files from COPA and from the
7     City in these cases, that we would be doing better at this
8     point.  But, apparently, we are not.
9              Even this week, we had to cancel several depositions
10    as a result of these late disclosures.
11             Of course, they are all the plaintiff's depositions,
12    because the defendants have completed their oral discovery.
13    And, now, the plaintiff is left here at the last minute trying
14    to scramble to do their discovery; no fault of the plaintiff's
15    counsel, because we don't have -- we have all of these witness
16    statements that have been out there, that were not disclosed to
17    us in a timely fashion.
18             This week, we had to cancel the deposition of the
19    midnight sergeant.
20             So, you know, the decedent in this case spent the
21    night in the Third District lockup; and, then, you know, was
22    dead on the floor.
23             THE COURT:  He was in custody for less than
24    twenty-four hours?
25             MS. HAMILTON:  He turned himself in on a warrant in

1  the afternoon.
2          THE COURT:  And somebody conveyed some medical
3  problem?
4          MS. HAMILTON:  Yes.
5          THE COURT:  Okay.
6          MS. HAMILTON:  And, then, he spent the night
7  overnight.
8          So, the overnight sergeant -- his name is Klamerus --
9  his deposition was scheduled earlier this week.  And we found
10 out, you know, in the couple days before, that there was a
11 sustained CR for inattention to duty, for releasing the wrong
12 prison the same day -- during the same time period -- as --
13 while, you know, Charles Jones, the decedent in this case, was
14 in there.
15         So, we are getting this -- the same CR -- either the
16 morning of or the day before Klamerus' deposition.
17         So, that is a big problem.  And, you know, I don't
18 know what to do about that.
19         So, in addition, you know, we do -- there is, in the
20 works, plaintiff is getting ready to file a motion to compel
21 Monell discovery because we can't seem to get responses to
22 Monell discovery, which I know Mr. Green is now working on, but
23 which we have been trying to get for months.  So, that is
24 coming.
25         And, you know, here we are now.

1      I don't think you need -- I think you can vacate at
2 this point the briefing schedule for sanctions.  If anything,
3 you know, I would say the City should be -- is subject to
4 sanctions.
5      I don't think any of these attorneys that are standing
6 before your Honor, you know, engaged in any sort of --
7      THE COURT:  Well, I don't have to vacate anything.  It
8 was up to you to file a motion.
9      MS. HAMILTON:  Okay.
10      THE COURT:  If you don't file anything, there is no
11 briefing schedule.
12      MS. HAMILTON:  No, I understand.
13      THE COURT:  Unless you want to -- I don't know if you
14 want to file anything at this point.
15      (Laughter.)
16      MR. GREENE:  No, your Honor.
17      MS. HAMILTON:  So, I mean, you know -- but now we seem
18 to be getting some documents.  But what we are left with here
19 is we have, you know, a month left in discovery.
20      You know, I personally have two trials during that
21 last -- during the next month-and-a-half already scheduled.
22 And I am going to be trying to fit in all of the defendants'
23 depositions, which are --
24      THE COURT:  Well, luckily, there is four other lawyers
25 in the case.

1  MS. HAMILTON: I understand. But it still puts a lot
2  of unnecessary -- I mean, there has been this delay that has
3  been caused.
4  So, I guess, you know, I am stressing that, you know,
5  we have some problems here.
6  Plaintiff still has discovery that is ongoing and
7  should not be trying to get it all done at the last minute, and
8  at the expense of the rest of our practices, because of the
9  delays caused by the City.
10  So, that is kind of where we are.
11  I don't think we are going to be filing a sanctions
12  motion.
13  THE COURT: Mr. Green, let me ask you --
14  MR. GREENE: Sure.
15  THE COURT: -- the last time we were here and there
16  was some discussion about late discovery, I expressed concern
17  about communication between your office and COPA, or whoever
18  else might be doing an investigation.
19  What is going on with that?
20  MR. GREENE: Actually, your Honor, I appreciate it.
21  And I think I can shed some light on, at least, this particular
22  investigation.
23  We had been in contact with the General Counsel at the
24  time -- in September -- Helen O'Shaughnessy, who left when IPRA
25  converted to COPA. That was the end of September.

1      At that time, there were no investigations.

2      THE COURT: So, it is just COPA? There is no more
3 IPRA?

4      MR. GREENE: Right, right. They switched it at the
5 end of September.

6      At that time, we had been inquiring a number of times,
7 "What is going on? Who is -- " you know, "Who are the
8 investigators and what is going on?"

9      And, basically, we were told that, "This is one of the
10 investigations that there were no investigators at the time
11 assigned."

12      It was, basically, on hold. It was not an active
13 investigation.

14      They were waiting for the entirely new employees --
15 the new COPA groups -- to come in. They were going through
16 training. They had learning curves. And they, you know, would
17 be -- and, of course, Helen, herself, left the office -- Ms.
18 O'Shaughnessy.

19      And at that time, Mr. Crase stepped up as the Acting
20 General Counsel. And within sixty days or so, we put in our
21 requests: "Are there any attachments at COPA and the old
22 IPRA?"

23      There is a requirement that, you know, in a timely
24 manner any evidentiary material that comes in is supposed to be
25 uploaded to the CLEAR System. And we put in our regular

1  requests. We got nothing.
2          Then, thirty days later, up to December, our
3  colleague, Brian Barnett, for the international -- for the
4  individual -- defendants, also put in a request. And at that
5  time there was nothing.
6          Well, obviously, as soon as we found out anything, in
7  -- a few weeks ago, we immediately -- I went down there and
8  discovered that, indeed, there was a new COPA group that was
9  brought on.
10         And they really did not even restart the investigation
11 until mid-November or so. That is when these statements were
12 coming in.
13         And, frankly, the new COPA employee, she apologized.
14 She didn't realize, when they said, "Timely manner," it meant
15 right away to download or, you know, upload those things.
16         And I understand, from Mr. Crase and the others, that
17 they now have a new performance -- what was it, performance
18 measure -- being implemented, that it must be uploaded ideally
19 within seven days.
20         So, everybody has notice, not only the attorneys from
21 the Corporation Counsel's Office, but the others.
22         So, anyway, when we got there, we also found out, in
23 reviewing the entire file, there really wasn't any additional
24 material that hadn't been produced, except for this brand new
25 material.

1            And, then, they expressed to me serious concerns about
2    releasing, at least, the investigative notes.
3            And they prepared a rather detailed privilege log.
4    And J. Westerly -- Westency (phonetic) -- who was the Deputy
5    Chief under Judge Banks, who is now running the operation
6    there, basically invoked the investigative privilege and the
7    deliberative privilege because they were taking this
8    investigation very seriously.
9            As an aside, your Honor, meeting with the new COPA
10   people, they are very bright.  They have some very talented
11   people in there.  I am hoping it bodes very well for the
12   future, as they get up and running.
13           And I think that is really the glitch that delayed,
14   for at least six to eight weeks, the information in this
15   particular file.
16           So, that's --
17           THE COURT:  How did the deposition transcripts get
18   into COPA's files?
19           MR. GREENE:  You know, they have a system where the
20   investigators can subpoena the Department of Law for any of our
21   deposition transcripts.  And apparently they did that.  It goes
22   through some other attorneys in our office.
23           And they were sent those depositions.  It is the same
24   ones we all have here.
25           And what they did was they want to -- we want to --

1  make sure they upload everything that they get.  So, that went
2  on the system.  That is why there is a few more brand new
3  attachments.  But they are, essentially, the same depositions
4  we have.
5          But they also had -- in the privilege log they had --
6  the transcripts with their investigator notes, highlighting
7  areas, what they are going to emphasize on, and things of that
8  nature.  And they asked -- completely claimed -- invoked a
9  privilege over that.  And they did provide a declaration in
10 support of that.
11         So, that is where it stands right now.
12         We are totally up to date.
13         THE COURT:  So --
14         MR. GREENE:  We have --
15         THE COURT:  -- you are confident that there is going
16 to be effective communication between the City and COPA, in
17 terms of cases of this nature, where there is ongoing
18 investigations occurring?
19         MR. GREENE:  Yes, your Honor.
20         That -- this -- is an issue especially with open
21 investigations.
22         Frankly, they are being much more, perhaps, diligent,
23 active.
24         I, personally, have been working as a liaison with
25 COPA, to make sure that these documents are presented or that a

1  privilege log is invoked.  And there are so many log files.
2  They are still catching up on a number of them.  But --
3             THE COURT:  Let me ask you about the deposition
4  transcripts.
5             MR. GREENE:  Sure.
6             THE COURT:  Would the attorney who is handling the
7  case from -- this case -- would they be aware that deposition
8  transcripts have been requested, pursuant to any formal request
9  made by COPA?
10            MR. GREENE:  Well, yes.
11            MS. BENSON:  If I can -- if I can -- on behalf of the
12 individual defendants.  Because I am on a case speaking --
13 there are some instances where I am the attorney that is served
14 with the subpoena.
15            But, in most instances, it is another attorney -- it
16 is one of our deputies in the office -- that has been served
17 with a subpoena and who facilitates the production to COPA, as
18 opposed to the attorney who is actually assigned the matter.
19            There are instances where that does happened, but COPA
20 is not one of them.
21            THE COURT:  All right.
22            Well, my suggestion is that you have a process whereby
23 the attorney who is of record in a case pending in federal
24 court is alerted that COPA is requesting deposition
25 transcripts.  Because this issue is going to come up, again,

Case: 1:16-cv-06146 Document #: 150 Filed: 03/05/18 Page 16 of 20 PageID #:812

16

1  and you are going to be subject to, you know, a possible, you
2  know, argument of sanctions as a result.
3             MS. BENSON:  Understood.  I will take that back to the
4  office.
5             THE COURT:  All right.
6             So, where do we go from here, then, Mr. Green?
7             You have now provided them everything that you believe
8  they are entitled to?
9             MR. GREENE:  As of January 23rd, we got it certified.
10 They have got everything.
11            Now, what is happening right now, it is an active
12 investigation.  We will do 30-day checks and be very specific.
13            I know Ms. Hamilton also suggests, you know, how we
14 look in desks for loose papers and everything.
15            They did that search, as well.
16            And it is really these new employees trying to catch
17 up and make sure everything is in place.  And it is -- they are
18 much more responsive, shall we say?
19            And I am confident that, you know, at least in this
20 case -- and, hopefully, all others -- we will be in better
21 shape.
22            THE COURT:  All right.
23            So, Ms. Hamilton, can we start getting these
24 depositions going, again, as a result?
25            MS. HAMILTON:  Yes.  We would certainly like to do

1 that.

2 I guess what I am going to ask for, your Honor -- I
3 don't know, does your Honor have jurisdiction to extend
4 discovery, if that is necessary, or are we going to have to go
5 before Judge Dow, if that is necessary?

6 THE COURT: I can do it if it is necessary.

7 So, what I am going to do, let me bring you back in
8 thirty days and say -- and ask -- that everybody work very
9 closely together to get depositions going.

10 And, in thirty days, I will look at what is happening
11 and hear you out on what you may need to finish things up, as a
12 result of this delay that has occurred.

13 MS. HAMILTON: Yes, Judge.

14 Just to warn you, I would be arguing that only
15 plaintiff gets an extension of discovery because there is no
16 need for the defendants to continue to do discovery beyond the
17 end of discovery, because it is not them that has been delayed
18 by this late disclosure. But that is something that we can
19 address later.

20 And, in addition, it is likely we are --

21 THE COURT: That is called a soft log. She is now
22 alerting you that you have a discovery cutoff of the end of
23 February, that she may not.

24 (Laughter.)

25 MS. BENSON: If I may -- and we have been working with

1  counsel -- there are still -- there is, at least, the one
2  deposition that we have been working on, to get scheduled.
3  　　　　　And, unfortunately, that doctor -- he is a
4  toxicologist -- is unavailable until March.
5  　　　　　So, to the extent you say that we should not be able
6  to do any further discovery, we have been attempting to work
7  with counsel to finish that last event, I think.
8  　　　　　THE COURT: Well, I am sure Ms. Hamilton will talk to
9  you about that, if you had ongoing discussions about that.
10 　　　　　MS. BENSON: Okay.
11 　　　　　THE COURT: I will also say that only, like, one thing
12 I got to do, that was so much fun, was haul in a doctor who
13 failed to respond to a subpoena. It was really nice to send
14 the marshals out.
15 　　　　　(Laughter.)
16 　　　　　THE COURT: And, then, to make him wait for half an
17 hour before the case was called, it was really, really fun.
18 　　　　　(Laughter.)
19 　　　　　MS. HAMILTON: And, then -- and, then -- like I
20 mentioned before, we will try not to, but we may be seeing you
21 before that on the Monell discovery.
22 　　　　　THE COURT: Just engage in your meet and confer
23 process, without using any -- you know, if you think about --
24 think about how it would sound if somebody was tape recording
25 your interactions, and that tape recording would be played in

1  open court.
2   MS. HAMILTON:  I think we would all agree that none of
3  those sort of interactions have happened --
4   MR. GREENE:  No.
5   MS. HAMILTON:  -- between myself and any of the
6  counsel.
7   THE COURT:  Yes.
8   All I am saying is that.
9   The other suggestion I have done in the past is I have
10 required meet and confers to be videotaped; and, before a
11 motion to compel could be filed, that the videotape had to be
12 presented to the Court.
13   So, I don't want to go through that because, quite
14 frankly, it is a waste of time.
15   It might be fun to watch every now and then, but it is
16 not going to be fun for the attorneys.
17   MS. HAMILTON:  I am going to be handling -- me and my
18 people that work from my office will be handling -- that, and
19 that will not be necessary.
20   THE COURT:  And I will say, you know, Mr. Granich is
21 not here.  He is not able to, you know, defend against the
22 statements.  So, I am not taking any action as a result of
23 those statements.  I am just giving you all of my own soft
24 logs.
25   MS. HAMILTON:  Thank you.

```
1            THE COURT:  All right.
2            A 30-day status.
3            THE CLERK:  March 1st at 10:00 a.m.
4            MS. HAMILTON:  So, that is after the close.
5            MR. GREENE:  Yes.
6            THE COURT:  I will not hold you to it, you know, as a
7   result.  But, you know, I do expect a lot of work to be done in
8   the next thirty days.
9            All right.  Thank you.
10           MS. HAMILTON:  Thank you your Honor.
11           MR. GREENE:  Thank you.
12                        *   *   *   *   *
13  I certify that the foregoing is a correct transcript from the
    digital recording of proceedings in the above-entitled matter,
14  to the best of my ability, given the limitations of using a
    digital-recording system.
15
16  /s/ Joene Hanhardt                    February 26, 2018
    Transcriber
17
```